EDWARD R. REINES (Bar No. 135960)
Email: edward.reines@weil.com
DEREK C. WALTER (Bar No. 246322)
Email: derek.walter@weil.com
201 Redwood Shores Parkway
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendant
ZYMO Research Corporation

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION AT SANTA ANA

| | |
|---|---|
| QIAGEN GMBH,<br><br>Plaintiff,<br><br>vs.<br><br>ZYMO RESEARCH CORPORATION,<br><br>Defendant. | Case No.  8:24-cv-01832-FWS-DFM<br><br>**DEFENDANT ZYMO RESEARCH CORPORATION'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>JURY TRIAL DEMANDED<br><br>Judge: Hon. Fred W. Slaughter |

Case No. 8:24-cv-01832-FWS-DFM

Defendant Zymo Research Corporation ("Zymo" or 'Defendant") hereby provides its First Amended Answer to the First Amended Complaint ("FAC") of Plaintiff QIAGEN GmbH ("QIAGEN" or "Plaintiff"). Unless specifically admitted, Zymo denies each and every allegation made in the FAC and states as follows:

## I. INTRODUCTION AND FACTUAL BACKGROUND

1. Zymo expressly denies that any Zymo product or any of its activities fall within the alleged scope of QIAGEN's "patented technology", including any claims of U.S. Patent Nos. 10,184,145 (the "'145 Patent") or 11,021,736 (the "'736 Patent") (collectively, the "Asserted Patents") or otherwise constitute infringement thereof. Zymo admits that DNA "stands for 'deoxyribonucleic acid" and "is the molecule that carries the genetic instructions for the development, function, growth, and reproduction of all living organisms." Zymo admits that in "humans, most of our DNA exists within our cells." The remainder of paragraph 1 of the FAC contains statement of opinion and legal conclusions to which no response is required. To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

2. Paragraph 2 of the FAC contains statement of opinion regarding technical subject matter to which no response is required. To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

3. Zymo admits that the '145 Patent and the '736 Patent identify "Qiagen GmbH" as the assignee. The remainder of Paragraph 3 of the FAC contains statement of opinion and legal conclusions to which no response is required. To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                             1                    Case No. 8:24-cv-01832-FWS-DFM

4.    Paragraph 4 of the FAC contains statement of opinion and legal conclusions to which no response is required.  To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

5.    Zymo's website speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of its website.  Zymo admits that it offers certain products, including products for extracting DNA.  The remainder of Paragraph 5 of the FAC contains statement of opinion and legal conclusions to which no response is required.  To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

6.    Zymo admits that it offers a product marketed as "MAGicBead™ cfDNA Isolation Kit."  Except as so admitted, Zymo denies any remaining allegations of Paragraph 6.

7.    Paragraph 7 of the FAC contains allegations regarding internal events within QIAGEN.  To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

8.    Paragraph 8 of the FAC contains allegations regarding internal events within QIAGEN.  To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

9.    Zymo expressly denies that any Zymo product or any of its activities fall within the alleged scope of QIAGEN's "patented technology", including any claims of the Asserted Patents or otherwise constitute infringement thereof.  Paragraph 9 of the FAC contains statement of opinion and legal conclusions to which no response is required.  Paragraph 9 of the FAC contains allegations regarding internal events within QIAGEN.  To the extent a response is required, Zymo is without knowledge

or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

10.   Zymo denies each and every allegation in Paragraph 10 of the FAC. QIAGEN's alleged findings regarding pH and surface charge, without any supporting data or information regarding its methodologies, do not support QIAGEN's assertion that Zymo's product "showed behavior that is consistent with an anion exchange mechanism."   Unlike QIAGEN's technology, Zymo's MAGicBead™ technology represents a novel and proprietary approach that does not rely on anion exchange for DNA binding and elution, as demonstrated in, for instance, the elution profiles shown below:



As shown above in the panel on the left, Zymo's product exhibits full DNA recovery at all NaCl concentrations, including 0 mM,  establishing that MAGicBead™ is insensitive to ions and efficiently elutes DNA without requiring ions.  In plain contrast, and as shown in the panel on the right, QIAGEN's product is sensitive to ions, exhibiting increasing elution as the concentration of NaCl increases.  As another example, the data below shows that as NaCl concentration is increased, Zymo's

MAGicBead™ product exhibits full retention of DNA whereas QIAGEN's product releases DNA:



This further confirms that MAGicBead™, unlike QIAGEN's product, does not utilize ion exchange.  QIAGEN's unsupported allegations about the use of different pH levels in MAGicBead™ and increased surface charge at low pH are consistent with alternative mechanisms of operation (such as a covalent bonding) and do not prove, let alone suggest, the use of anion exchange in Zymo's MAGicBead™ products. Accordingly, Zymo denies each and every allegation of Paragraph 10 of the FAC.

11.  As described above, QIAGEN's "experiments" and "analyses of the Accused Products" do not show that the Accused Product practice the claimed invention.  Zymo expressly denies that any Zymo product or any of its activities fall within the alleged scope of QIAGEN's "patented technology", including any claims of the Asserted Patents or otherwise constitute infringement thereof.  Paragraph 11 of the FAC contains statements of opinion and legal conclusions to which no response is required.  To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

12.    Zymo admits that Exhibit 2 purports to be a copy of a letter from QIAGEN to Zymo, dated November 27, 2023 and referencing the '145 and '736 Patents.  The remainder of Paragraph 12 of the FAC contains statement of opinion and legal conclusions to which no response is required.  To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

13.    In response to Plaintiff's November 27, 2023 letter, Defendant sent letters to QIAGEN explaining that Zymo's products, including that Zymo's MAGicBead™ cfDNA Isolation Kit, represent a novel and proprietary approach.  Most important, Zymo explained that its Magic Technology is "distinctly diverging from Qiagen`s anion exchange method" and that Zymo was "not only open to engaging in discussions but are also willing to share materials embodying the confidential information underpinning Zymo's Magic Technology with proper procedures."  Ex. 1.  In view of this, Zymo further stated "that we are confident that there is no infringement of Qiagen's Patents." Ex. 1.  The remainder of Paragraph 13 of the FAC contains statement of opinion and legal conclusions to which no response is required. To the extent a response is required, Zymo denies each and every allegation.

14.    Through the process of negotiating a confidentiality agreement, Zymo emphasized the importance of protecting its innovative approach.  In contract to Zymo's relatively small size, QIAGEN "has held a dominant global position in nucleic acid purification for several decades and has much to gain from comprehending the capabilities of Zymo's Technology in this multi-billion-dollar market by quashing out any new disruptive technologies. Furthermore, Qiagen can strategically leverage its patent portfolio to gather information." Ex. 1.  As such, Zymo and QIAGEN engaged in negotiating a confidentiality agreement, but were unable to agree on terms because QIAGEN did not believe the level of protections that Zymo requested were necessary.  Unable to reach an agreement, and attempting

SECOND AMENDED ANSWER AND COUNTERCLAIMS

5

Case No. 8:24-cv-01832-FWS-DFM

to avoid further dispute and allay QIAGEN's concerns over potential infringement, Zymo subsequently offered to send QIAGEN internal technical data and products regarding the MAGicBead™ product, including Zymo's purification MAGicBeads themselves, standard operating procedures, and reagents for QIAGEN's independent analysis.  Ex. 2.  Zymo even offered to provide these free of charge, and offered to pay costs associated with QIAGEN's review, including the technician's time.  *Id.* Zymo likewise informed QIAGEN of the specific equipment it would need to carry out the needed testing to confirm non-infringement, explaining that the tests would take only about a half day.  QIAGEN, however, did not respond to Zymo's offer. Instead, QIAGEN jumped to litigation and filed a complaint roughly five months later on August 20, 2024.  Had QIAGEN taken up Zymo on its offer, it would have been able to generate for itself data of the type shown herein, which establishes that Zymo's product is insensitive to anions and hence does not use anion exchange.  The remainder of Paragraph 14 of the FAC contains statement of opinion and legal conclusions to which no response is required.  To the extent a response is required, Zymo denies each and every allegation.

15.    On October 10, 2024, counsel for Zymo sent a letter to QIAGEN and explained again that Zymo's products do not utilize anion exchange.  In the letter, Zymo explained that central to the Asserted Patents is the use of "anion exchange groups," but that QIAGEN had not provided any allegations suggesting any meaningful pre-filing investigation and merely relied on a page from a flyer that does not mention anion exchange.  The remainder of Paragraph 15 of the FAC contains statement of opinion and legal conclusions to which no response is required.  To the extent a response is required, Zymo denies each and every allegation.

16.    As described above, QIAGEN's purported "testing" of the Accused Product fails to demonstrate infringement.  Zymo expressly denies that any Zymo product or any of its activities fall within the alleged scope of QIAGEN's "patented technology", including any claims of the Asserted Patents or otherwise constitute

infringement thereof.  The remainder of Paragraph 16 of the FAC contains statement of opinion and legal conclusions to which no response is required.  To the extent a response is required, Zymo denies each and every allegation in that paragraph

17.   Zymo's November 12, 2024 press release speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN.  Zymo denies any remaining allegations of Paragraph 17.  Regarding the non-number paragraph following Paragraph 17, Zymo expressly denies that any Zymo product or any of its activities fall within the alleged scope of any claims of the Asserted Patents or otherwise constitute infringement thereof.

## II.   THE PARTIES

18.   Zymo admits that the FAC asserts that QIAGEN GmbH is a Gesellschaft mit beschränkter Haftung ("GmbH") headquartered at Qiagen Str. 1, 40724 Hilden, North Rhine-Westphalia in the Federal Republic of Germany.

19.   Zymo admits that it is a California corporation with its principal place of business at 17062 Murphy Ave., Irvine, California 92614.  Zymo admits that it has a registered officer, Xi Yu Jia, at 17062 Murphy Avenue, Irvine, CA 92614.

## III.   JURISDICTION AND VENUE

20.   Zymo admits that the FAC purports to contain claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

21.   Zymo admits that this Court has subject matter jurisdiction over causes of action for alleged patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

22.   The allegations of personal jurisdiction in paragraph 14 constitute a legal conclusion that requires no response.

23.   The allegations of venue in paragraph 23 constitute a legal conclusion that requires no response.

## IV.   THE ASSERTED PATENTS

24.   Zymo admits that, on its face, the '145 Patent is entitled "Rapid Method for Isolating Extracellular Nucleic Acids," states that it was issued on January 22,

2019, the named inventors are Martin Horlitz, Annette Nocon, Markus Sprenger-Haussels, Peter Grünefeld, and Christoph Erbacher, and Qiagen GmbH is listed as the assignee. Zymo admits that, on its face, the '736 Patent identifies U.S. Patent Application No. 14/347,452, and PCT/EP2012/068847 filed on September 25, 2012, and to European Patent Organization application 11007824 filed September 26, 2011. The remainder of Paragraph 24 of the FAC contains statement of opinion and legal conclusions to which no response is required. To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

25. Zymo admits that, on its face, the '736 Patent is entitled "Rapid Method for Isolating Extracellular Nucleic Acids," states that it was issued on June 1, 2021, the named inventors are Martin Horlitz, Annette Nocon, Markus Sprenger-Haussels, Peter Grünefeld, and Christoph Erbacher, and Qiagen GmbH is listed as the assignee. Zymo admits that, on its face, the '736 Patent identifies U.S. Patent Application Nos. 16/204,332 and 14/347,452, and PCT/EP2012/068847 filed on September 25, 2012, and to European Patent Organization application 11007824 filed September 26, 2011. The remainder of Paragraph 25 of the FAC contains statement of opinion and legal conclusions to which no response is required. To the extent a response is required, Zymo is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies each and every allegation in that paragraph.

## V.   RESPONSE TO FIRST CLAIM FOR RELIEF

26. Zymo incorporates and restates by reference its responses to Paragraphs 1-25 of the FAC as though fully set forth herein.

27. Zymo denies each and every allegation in Paragraph 27 of the FAC.

28. Zymo admits that QIAGEN has reproduced the text of Claim 1 of the '145 Patent in Paragraph 28. Except as so admitted, Zymo denies any remaining allegations of Paragraph 28.

29. As described above, QIAGEN's alleged findings regarding pH and surface charge, without any supporting data or information regarding its methodologies, do not support QIAGEN's assertion of "infringement of the '145 Patent." As detailed above, *supra* ¶ 10, a change in pH or surface charge between binding and elution does not demonstrate that ion exchange is occurring. As described above, the MAGicBead™ product is insensitive to ions. *See id.* Specifically, a NaCl ion wash utilizing QIAGEN's product results in 0% DNA retention, while the MAGicBead™ approach results in no significant DNA loss. The remainder of Paragraph 29 of the FAC contains statement of opinion and legal conclusions to which no response is required. To the extent a response is required, Zymo denies each and every allegation.

30. Exhibit 5 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 5. Zymo denies any remaining allegations of Paragraph 30.

31. Exhibit 5 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 5. Zymo denies any remaining allegations of Paragraph 31.

32. Exhibit 5 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 5. Zymo denies any remaining allegations of Paragraph 32.

33. Zymo admits that Exhibit 6 purports to be a "Quick Protocol" instruction sheet for the "MAGicBead™ cfDNA Isolation Kit." Exhibit 6 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 6. Zymo denies any remaining allegations of Paragraph 33.

34. Exhibit 6 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 6. Zymo denies any remaining allegations of Paragraph 34.

35. Exhibit 6 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 6. Zymo denies any remaining allegations of Paragraph 35.

36. Exhibits 5 and 6 speak for themselves and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 6. Zymo denies any remaining allegations of Paragraph 36.

37. Zymo denies each and every allegation in Paragraph 37 of the FAC.

38. Zymo denies each and every allegation in Paragraph 38 of the FAC.

39. Zymo denies each and every allegation in Paragraph 39 of the FAC.

40. Zymo denies each and every allegation in Paragraph 40 of the FAC.

41. Zymo denies each and every allegation in Paragraph 41 of the FAC.

42. Zymo denies each and every allegation in Paragraph 42 of the FAC.

## VI.   RESPONSE TO SECOND CLAIM FOR RELIEF

43. Zymo incorporates and restates by reference its responses to Paragraphs 1-42 of the FAC as though fully set forth herein.

44. Zymo denies each and every allegation in Paragraph 44 of the FAC.

45. Zymo admits that QIAGEN has reproduced the text of Claim 1 of the '736 Patent in Paragraph 36. Except as so admitted, Zymo denies any remaining allegations of Paragraph 45.

46. As described above, QIAGEN's alleged findings regarding pH and surface charge, without any supporting data or information regarding its methodologies, do not support QIAGEN's assertion of "infringement of the '736 Patent." As detailed above, *supra* ¶ 10, a change in pH or surface charge between binding and elution does not demonstrate that ion exchange is occurring. As described above, the MAGicBead™ product is insensitive to ions. *See id.* Specifically, a NaCl ion wash utilizing QIAGEN's approach results in 0% DNA retention, while the MAGicBead™ approach results in no significant DNA loss. The remainder of Paragraph 46 of the FAC contains statement of opinion and legal

conclusions to which no response is required.  To the extent a response is required, Zymo denies each and every allegation.

47.   Exhibit 5 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 5.  Zymo denies any remaining allegations of Paragraph 47.

48.   Exhibit 5 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 5.  Zymo denies any remaining allegations of Paragraph 48.

49.   Exhibit 5 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 5.  Zymo denies any remaining allegations of Paragraph 49.

50.   Zymo admits that Exhibit 6 purports to be a "Quick Protocol" instruction sheet for the "MAGicBead™ cfDNA Isolation Kit."  Exhibit 6 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 6. Zymo denies any remaining allegations of Paragraph 50.

51.   Exhibit 6 speaks for itself and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 6.  Zymo denies any remaining allegations of Paragraph 51.

52.   Exhibits 5 and 6 speak for themselves and Zymo denies any characterization inconsistent therewith by QIAGEN of Exhibit 6.  Zymo denies any remaining allegations of Paragraph 52.

53.   Zymo denies each and every allegation in Paragraph 53 of the FAC.

54.   Zymo denies each and every allegation in Paragraph 54 of the FAC.

55.   Zymo denies each and every allegation in Paragraph 55 of the FAC.

56.   Zymo denies each and every allegation in Paragraph 56 of the FAC.

57.   Zymo denies each and every allegation in Paragraph 57 of the FAC.

58.   Zymo denies each and every allegation in Paragraph 58 of the FAC

## VII.   JURY DEMAND

59.   Zymo demands a jury trial on all claims so triable.

## VIII.   PRAYER FOR RELIEF

Zymo denies that Plaintiff is entitled to any relief whatsoever, including the relief requested in the FAC, from either Zymo or the Court.  Plaintiff's prayer for relief should be denied in its entirety.

## AFFIRMATIVE DEFENSES

Zymo denies that Plaintiff is entitled to any relief whatsoever, including the relief requested in the FAC, from either Zymo or the Court.  Plaintiff's prayer for relief should be denied in its entirety.

## FIRST DEFENSE – NON-INFRINGEMENT

1.   Zymo has not infringed, and is not infringing directly, indirectly, willfully, or in any other manner any valid and enforceable claim of the Asserted Patents, either literally or under the doctrine of equivalents.

2.   For example, Zymo's MAGicBead™ cfDNA Isolation Kit represents a novel and proprietary approach that does not practice anion exchange for DNA binding and elution, as required by the asserted claims of the Asserted patents.

## SECOND DEFENSE – INVALIDITY

3.   The asserted claims of the Asserted Patents are invalid for failing to comply with one or more of the requirements for patentability under, including but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 *et seq*., and the rules, regulations, and laws pertaining to those provisions, including the application provisions of Title 37 of the Code of Federal Regulations.

4.   For example, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of U.S. Patent Nos. 9,909,118, 9,163,229, 6,914,137, U.S. Patent Application No. 2011/0319506, alone or in combination, which disclose and/or render obvious all elements of the claims of the Asserted Patents.

## THIRD DEFENSE – FAILURE TO STATE A CLAIM

5. The FAC, in whole or in part, fails to state a claim upon which relief can be granted.

6. As an example, the FAC fails to state a claim upon which relief may be granted because the claims of the Asserted Patents are invalid for failing to comply with one or more of the requirements for patentability under, including but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 *et seq.*, as set forth below in Zymo's Counterclaims.

7. Zymo hereby incorporates and restates the preceding paragraphs of its Affirmative Defenses as though fully set forth herein.

## FOURTH DEFENSE – LIMITATIONS ON RECOVERY

8. Plaintiff's claim for damages and other remedies are limited by 35 U.S.C. §§ 287 and/or 288. Plaintiff is barred by 35 U.S.C. § 288 from recovering costs associated with this action.

## FIFTH DEFENSE – ADEQUATE REMEDY AT LAW

9. Plaintiff is not entitled to injunctive relief against Zymo because any alleged injury is not irreparable, there is an adequate remedy at law for any alleged injury, the balance of hardships and equities does not favor an injunction, and the public interest would be disserved by an injunction.

## SIXTH DEFENSE – NO EXCEPTIONAL CASE

10. Zymo has not engaged in any conduct that would make this an exceptional case or that would entitled Plaintiff to an award of attorneys' fees.

## SEVENTH DEFENSE – UNENFORCEABILITY DUE TO PATENT MISUSE

11. Plaintiff is barred from maintaining this action and/or any recovery under its claims by the doctrine of patent misuse. By asserting claims of the Asserted patents against Zymo, Plaintiff has engaged in patent misuse so as to render the Asserted Patents unenforceable seeking to broaden the scope of the patent grant with anticompetitive effect. Any reasonable pre-filing assessment of the accused products

against the Asserted Patents, properly construed in light of the specification and prosecution history, would have led Plaintiff to the conclusion that Zymo's accused MAGicBead™ cfDNA Isolation Kit does not practice the limitations of the asserted claims. For example, as detailed above, Defendant sent Plaintiff a letter offering to provide resources and pay costs associated with Plaintiff's independent analysis to confirm non-infringement. Plaintiff's unsupported allegations regarding analyses of pH levels and surface charges in MAGicBead™ do not prove, let alone suggest, that anion exchange is used in MAGicBead™, and QIAGEN's decision to nonetheless pursue litigation in the face of Zymo's offer to assist it with testing that would prove non-infringement shows that QIAGEN's actions can only be motivated by a desire to harm Zymo competitively. With Defendant's prior notice, Plaintiffs actions in pursuing its FAC cannot be found to be "objectively reasonable," and are meant solely to inflict commercial harm on Defendant.

### EIGHTH DEFENSE -- FRIVOLOUS CASE

12. The filing of Plaintiff's FAC is not brought in good faith and with reasonable cause and violates Rule 11 or the Federal Rules of Civil Procedure to the extent the FAC advances frivolous claims without factual or legal merit, thereby entitled Defendant to all reasonable expenses incurred in the defense of this action, including attorney's fees and costs. For example, as detailed above, Defendant sent letters to Plaintiff demonstrating the non-infringement of the Accused Product and offering to provide resources and pay costs associated with Plaintiff's independent analysis to confirm non-infringement. Nonetheless, Plaintiff ignored Defendant's evidence of non-infringement and offer to verify and filed the frivolous FAC, resulting in financial and reputational harm to Defendant.

13. Zymo hereby incorporates and restates the preceding paragraphs of its Affirmative Defenses as though fully set forth herein.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

14

Case No. 8:24-cv-01832-FWS-DFM

# ZYMO'S COUNTERCLAIMS

In support of its Counterclaims against Plaintiff, Zymo alleges as follows:

## NATURE OF THE ACTION

1.     In response to Plaintiff's allegations in the FAC, Zymo seeks a declaratory judgment that it has not infringed the Asserted Patents and that the Asserted Patents are invalid and unenforceable under the Patent Laws of the United States, Title 35 of the United States Code.

2.     Prior to filing the FAC, and in response to Plaintiff's November 27, 2023 letter, Defendant sent letters to QIAGEN explaining that Zymo's products, including that Zymo's MAGicBead™ cfDNA Isolation Kit, represent a novel and proprietary approach.  Most important, Zymo explained that its Magic Technology is "distinctly diverging from Qiagen`s anion exchange method."   In view of this, Zymo further stated "that we are confident that there is no infringement of Qiagen's Patents."  Ex. 1.

3.     Attempting to avoid further dispute and allay QIAGEN's concerns over potential infringement, Zymo subsequently offered to send QIAGEN internal technical data and products regarding the MAGicBead™ product, including Zymo's purification MAGicBeads themselves, standard operating procedures, and reagents for QIAGEN's independent analysis. Ex. 2  Zymo even offered to provide these free of charge, and offered to pay costs associated with QIAGEN's review, including the technician's time. *Id.*  Zymo likewise informed QIAGEN of the specific equipment it would need to carry out the needed testing to confirm non-infringement, explaining that the tests would take only about a half day.  QIAGEN, however, did not respond to Zymo's offer.  Instead, QIAGEN jumped to litigation and filed a Complaint roughly five months later on August 20, 2024.

4.     Throughout the pre-suit correspondence, Zymo emphasized its desire to engage in business resolutions to avoid costly litigation.  Since the filing of the

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                                      15                          Case No. 8:24-cv-01832-FWS-DFM

frivolous Complaint on August 20, 2024, Zymo has suffered financial impact due to operational disruptions, and damage to its reputation and brand integrity.

## THE PARTIES

5.    QIAGEN GmbH is a Gesellschaft mit beschränkter Haftung ("GmbH") headquartered at Qiagen Str. 1, 40724 Hilden, North Rhine-Westphalia in the Federal Republic of Germany.

6.    Zymo is a corporation organized and existing under the laws of the State of California, with its principal place of business at 17062 Murphy Ave., Irvine, California, 92614.

## JURISDICTION AND VENUE

7.    The Court has subject matter jurisdiction over Zymo's declaratory judgment Counterclaims pursuant to 28 U.S.C. §§ 2201 and 2202.

8.    This Court has personal jurisdiction over QIAGEN because the Plaintiff consented to jurisdiction in this District by filing the FAC in this action.

9.    To the extent that venue is proper in the underlying patent infringement action, venue is also proper with respect to Zymo's Counterclaims pursuant to 28 U.S.C. §§ 1391 and 1400(b) and because the Plaintiff consented to this venue by filing its FAC in this action.

## FIRST COUNT

## DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,184,145

10.    Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

11.    The Plaintiff has brought an action asserting the '145 Patent against Zymo and have alleged that QIAGEN is the assignee of the '145 Patent.

12.    The Plaintiff has alleged and continues to allege that Zymo has directly, indirectly, and willfully infringed and continues to directly, indirectly, and willfully infringe one or more claims of the '145 Patent.

SECOND AMENDED ANSWER AND COUNTERCLAIMS                    16                    Case No. 8:24-cv-01832-FWS-DFM

13. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between the Plaintiff and Zymo concerning whether Zymo has infringed and is infringing any valid and enforceable claim of the '145 Patent.

14. Zymo hereby seeks a declaration that Zymo has not infringed and is not infringing any valid and enforceable claim of the '145 Patent.

15. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the appropriate Court.

## SECOND COUNT

## DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 11,021,736

16. Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

17. The Plaintiff has brought an action asserting the '736 Patent against Zymo and have alleged that QIAGEN is the assignee of the '736 Patent.

18. The Plaintiff has alleged and continues to allege that Zymo has directly, indirectly, and willfully infringed and continues to directly, indirectly, and willfully infringe one or more claims of the '736 Patent.

19. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between the Plaintiff and Zymo concerning whether Zymo has infringed and is infringing any valid and enforceable claim of the '736 Patent.

20. Zymo hereby seeks a declaration that Zymo has not infringed and is not infringing any valid and enforceable claim of the '736 Patent.

21. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the appropriate Court.

## THIRD COUNT

## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 10,184,145

22. Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

23. The Plaintiff has brought an action asserting the '145 Patent against Zymo and have alleged that QIAGEN is the assignee of the '145 Patent.

24. The Plaintiff has alleged and continues to allege that Zymo has directly, indirectly, and willfully infringed and continues to directly, indirectly, and willfully infringe one or more claims of the '145 Patent.

25. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between the Plaintiff and Zymo concerning whether Zymo has infringed and is infringing any valid and enforceable claim of the '145 Patent.

26. The claims of the '145 patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations, and laws pertaining thereof.

27. Zymo incorporates by reference and restates the preceding paragraphs of Zymo's Second Affirmative Defense of Invalidity as though fully set forth herein.

28. Zymo hereby seeks a declaration that the claims of the '145 Patent are invalid.

29. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the appropriate Court.

## FOURTH COUNT

## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 11,021,736

30. Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

18

Case No. 8:24-cv-01832-FWS-DFM

31. The Plaintiff has brought an action asserting the '736 Patent against Zymo and have alleged that QIAGEN is the assignee of the '736 Patent.

32. The Plaintiff has alleged and continues to allege that Zymo has directly, indirectly, and willfully infringed and continues to directly, indirectly, and willfully infringe one or more claims of the '736 Patent.

33. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between the Plaintiff and Zymo concerning whether Zymo has infringed and is infringing any valid and enforceable claim of the '736 Patent.

34. The claims of the '736 patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and/or the rules, regulations, and laws pertaining thereof.

35. Zymo incorporates by reference and restates the preceding paragraphs of Zymo's Second Affirmative Defense of Invalidity as though fully set forth herein.

36. Zymo hereby seeks a declaration that the claims of the '736 Patent are invalid.

37. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the appropriate Court.

## FIFTH COUNT

### DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 10,184,145

38. Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

39. The Plaintiff has brought an action asserting the '145 Patent against Zymo and has alleged that QIAGEN is the assignee of the '145 Patent.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

19

Case No. 8:24-cv-01832-FWS-DFM

40.    The Plaintiff has alleged and continues to allege that Zymo has directly, indirectly, and willfully infringed and continues to directly, indirectly, and willfully infringe one or more claims of the '145 Patent.

41.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between the Plaintiff and Zymo concerning whether Zymo has infringed and is infringing any valid and enforceable claim of the '145 Patent.

42.    The claims of the '145 patent are unenforceable pursuant to the doctrine of patent misuse.

43.    Prior to filing the FAC, and in response to Plaintiff's November 27, 2023 letter, Defendant sent letters to QIAGEN explaining that Zymo's products, including that Zymo's MAGicBead™ cfDNA Isolation Kit, represent a novel and proprietary approach.  Most important, Zymo explained that its MAGicBead™ technology is "distinctly diverging from Qiagen`s anion exchange method."  In view of this, Zymo further stated "that we are confident that there is no infringement of Qiagen's Patents." Ex. 1.  Thus, before the filing of this lawsuit, QIAGEN was on notice that Zymo's MAGicBead™ products do not use anion exchange and hence cannot infringe the asserted claims of the '145 patent, all of which require the use of "anion exchange."

44.    QIAGEN's FAC alleges that "QIAGEN performed experiments" to measure the pH of the Accused Product's buffers and mixtures and the surface charge of the magnetic beads.  QIAGEN's allegations, without any supporting data or information regarding its methodologies, do not support QIAGEN's assertion that Zymo's product "showed behavior that is consistent with an anion exchange mechanism."  Unlike QIAGEN's technology, Zymo's MAGicBead™ technology represents a novel and proprietary approach that does not rely on anion exchange for DNA binding and elution, as demonstrated in, for instance, the elution profiles shown below:

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                                        20                        Case No. 8:24-cv-01832-FWS-DFM



As shown above in the panel on the left, Zymo's product exhibits full DNA recovery at all NaCl concentrations, including 0 mM, establishing that MAGicBead™ is insensitive to ions and efficiently elutes DNA without requiring ions. In plain contrast, and as shown in the panel on the right, QIAGEN's product is sensitive to ions, exhibiting increasing elution as the concentration of NaCl increases. As another example, the data below shows that as NaCl concentration is increased, Zymo's MAGicBead™ product exhibits full retention of DNA whereas in QIAGEN's product DNA is released:



45.   This further confirms that MAGicBead™, unlike QIAGEN's product, does not utilize ion exchange.  QIAGEN's unsupported allegations about the use of different pH levels in MAGicBead™ and increased surface charge at low pH are consistent with alternative mechanisms of operation (such as a covalent bonding) and do not prove, let alone suggest, the use of anion exchange in Zymo's MAGicBead™ products.

46.   Attempting to avoid further dispute and allay QIAGEN's concerns over potential infringement, Zymo subsequently offered to send QIAGEN internal technical data and products regarding the MAGicBead™ product, including Zymo's purification MAGicBeads themselves, standard operating procedures, and reagents for QIAGEN's independent analysis.  Ex. 2.  Zymo even offered to provide these free of charge, and offered to pay costs associated with QIAGEN's review, including the technician's time. *Id.*  Zymo likewise informed QIAGEN of the specific equipment it would need to carry out the needed testing to confirm non-infringement, explaining that the tests would take only about a half day.  QIAGEN, however, did not respond to Zymo's offer.  Instead, QIAGEN jumped to litigation and filed the Complaint roughly five months later on August 20, 2024.  Had QIAGEN taken up Zymo on its

SECOND AMENDED ANSWER AND COUNTERCLAIMS                    22                    Case No. 8:24-cv-01832-FWS-DFM

offer, it would have been able to promptly generate data of precisely the type shown above, which demonstrates non-infringement.

47.    By nonetheless asserting claims of the Asserted Patents against Zymo, Plaintiff has engaged in patent misuse so as to render the Asserted Patents unenforceable seeking to broaden the scope of the patent grant with anticompetitive effect.  Any reasonable pre-filing assessment of the accused products against the Asserted Patents, properly construed in light of the specification and prosecution history, would have led Plaintiff to the conclusion that Zymo's accused MAGicBead™ cfDNA Isolation Kit does not practice the limitations of the asserted claims.  For example, as detailed above, Defendant sent Plaintiff a letter offering to provide resources and pay costs associated with Plaintiff's independent analysis to confirm non-infringement.  Plaintiff's unsupported allegations regarding analyses of pH levels and surface charges in MAGicBead™ do not prove, let alone suggest, that anion exchange is used in MAGicBead™, and QIAGEN's decision to nonetheless pursue litigation in the face of Zymo's offer to assist it with testing that would prove non-infringement shows that QIAGEN's actions can only be motivated by a desire to harm Zymo competitively.  With Defendant's prior notice, Plaintiffs actions in pursuing its FAC cannot be found to be "objectively reasonable," and are meant solely to inflict commercial harm on Defendant.  Through its bad faith, knowingly baseless claim of infringement, the Plaintiffs seek to broaden the scope of the patent grant— i.e., to prohibit more than it had claimed—in an effort to harm Zymo and reduce competition.

48.    Zymo thus hereby seeks a declaration that the claims of the '145 Patent are unenforceable.

49.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the appropriate Court.

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                    23                    Case No. 8:24-cv-01832-FWS-DFM

## SIXTH COUNT

## DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 11,021,736

50.    Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

51.    The Plaintiff has brought an action asserting the '736 Patent against Zymo and have alleged that QIAGEN is the assignee of the '736 Patent.

52.    The Plaintiff has alleged and continues to allege that Zymo has directly, indirectly, and willfully infringed and continues to directly, indirectly, and willfully infringe one or more claims of the '736 Patent.

53.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between the Plaintiff and Zymo concerning whether Zymo has infringed and is infringing any valid and enforceable claim of the '736 Patent.

54.    The claims of the '736 patent are unenforceable pursuant to the doctrine of patent misuse.

55.    Prior to filing the FAC, and in response to Plaintiff's November 27, 2023 letter, Defendant sent letters to QIAGEN explaining that Zymo's products, including that Zymo's MAGicBead™ cfDNA Isolation Kit, represent a novel and proprietary approach.  Most important, Zymo explained that its MAGicBead™ technology is "distinctly diverging from Qiagen`s anion exchange method."  In view of this, Zymo further stated "that we are confident that there is no infringement of Qiagen's Patents." Ex. 1.  Thus, before the filing of this lawsuit, QIAGEN was on notice that Zymo's MAGicBead™ products do not use anion exchange and hence cannot infringe the asserted claims of the '145 patent, all of which require the use of "anion exchange."

56.    QIAGEN's FAC alleges that "QIAGEN performed experiments" to measure the pH of the Accused Product's buffers and mixtures and the surface charge of the magnetic beads.  QIAGEN's allegations, without any supporting data or information regarding its methodologies, do not support QIAGEN's assertion that

Zymo's product "showed behavior that is consistent with an anion exchange mechanism." Unlike QIAGEN's technology, Zymo's MAGicBead™ technology represents a novel and proprietary approach that does not rely on anion exchange for DNA binding and elution, as demonstrated in, for instance, the elution profiles shown below:



As shown above in the panel on the left, Zymo's product exhibits full DNA recovery at all NaCl concentrations, including 0 mM, establishing that MAGicBead™ is insensitive to ions and efficiently elutes DNA without requiring ions. In plain contrast, and as shown in the panel on the right, QIAGEN's product is sensitive to ions, exhibiting increasing elution as the concentration of NaCl increases. As another example, the data below shows that as NaCl concentration is increased, Zymo's MAGicBead™ product exhibits full retention of DNA whereas in QIAGEN's product DNA is released:



57. This further confirms that MAGicBead™, unlike QIAGEN's product, does not utilize ion exchange. QIAGEN's unsupported allegations about the use of different pH levels in MAGicBead™ and increased surface charge at low pH are consistent with alternative mechanisms of operation (such as a covalent bonding) and do not prove, let alone suggest, the use of anion exchange in Zymo's MAGicBead™ products.

58. Attempting to avoid further dispute and allay QIAGEN's concerns over potential infringement, Zymo subsequently offered to send QIAGEN internal technical data and products regarding the MAGicBead™ product, including Zymo's purification MAGicBeads themselves, standard operating procedures, and reagents for QIAGEN's independent analysis. Ex. 2. Zymo even offered to provide these free of charge, and offered to pay costs associated with QIAGEN's review, including the technician's time. *Id.* Zymo likewise informed QIAGEN of the specific equipment it would need to carry out the needed testing to confirm non-infringement, explaining that the tests would take only about a half day. QIAGEN, however, did not respond to Zymo's offer. Instead, QIAGEN jumped to litigation and filed the Complaint roughly five months later on August 20, 2024. Had QIAGEN taken up Zymo on its

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                                    26                    Case No. 8:24-cv-01832-FWS-DFM

offer, it would have been able to promptly generate data of precisely the type shown above, which demonstrates non-infringement.

59.     By asserting claims of the Asserted Patents against Zymo, Plaintiff has engaged in patent misuse so as to render the Asserted Patents unenforceable seeking to broaden the scope of the patent grant with anticompetitive effect.  Any pre-filing assessment of the accused products against the Asserted Patents, properly construed in light of the specification and prosecution history, would have led Plaintiff to the conclusion that Zymo's accused MAGicBead$^{TM}$ cfDNA Isolation Kit does not practice the limitations of the asserted claims.  For example, as detailed above, Defendant sent Plaintiff a letter offering to provide resources and pay costs associated with Plaintiff's independent analysis to confirm non-infringement.   Plaintiff's unsupported allegations regarding analyses of pH levels and surface charges in MAGicBead™ do not prove, let alone suggest, that anion exchange is used in MAGicBead™, and QIAGEN's decision to nonetheless pursue litigation in the face of Zymo's offer to assist it with testing that would prove non-infringement shows that QIAGEN's actions can only be motivated by a desire to harm Zymo competitively.  With Defendant's prior notice, Plaintiffs actions in pursuing its FAC cannot be found to be "objectively reasonable," and are meant solely to inflict commercial harm on Defendant.    Through its bad faith, knowingly baseless claim of infringement, the Plaintiffs seek to broaden the scope of the patent grant—i.e., to prohibit more than it had claimed—in an effort to harm Zymo and reduce competition

60.   Zymo thus hereby seeks a declaration that the claims of the '736 Patent are unenforceable.

61.   A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the appropriate Court.

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                                          27                          Case No. 8:24-cv-01832-FWS-DFM

## SEVENTH COUNT

## MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT, 15 U.S.C. § 2 (SHAM LITIGATION)

62.   Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

63.   Plaintiff has engaged, knowingly and willingly, in a course of conduct designed to obtain or maintain anticompetitive power improperly in the United States in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.  This course of conduct includes the prosecution of this sham lawsuit against Zymo premised on objectively and subjectively baseless claims of infringement of the '145 and '736 Patents.  Plaintiff has engaged in this conduct in bad faith, knowing that the claims of the '145 and '736 Patents are not infringed.

### a.   Relevant Market and Barriers to Entry

64.   The relevant market is the cfDNA recover, isolation, and analysis market. *See* Dkt. No. 1 ¶ 7.  cfDNA recovery, isolation, and analysis is the process of separating target cfDNA molecules from other biological components to obtain a cfDNA sample for further analysis or experimentation.  cfDNA recovery and isolation is a critical step in many molecular biology techniques used by industry and researchers, including diagnostic techniques such as cancer detection and monitoring, non-invasive prenatal testing, and organ transplant monitoring.

65.   The unique characteristics of cfDNA mean that there are no viable alternatives to cfDNA recover, isolation, and analysis.  For example, cfDNA is minimally invasive to collect because it is readily accessible in blood plasma and can be obtained through a blood draw.  Additionally, cfDNA has various origins and can be used in a variety of diagnostic settings, from cancer screening to organ transplant monitoring.  As explained by QIAGEN's FAC, the "collection of cfDNA provides several advantages," including that it "is minimally invasive and can be achieved serially to monitor the progress of a disease" providing "real-time information." Dkt.

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                              28                    Case No. 8:24-cv-01832-FWS-DFM

No. 1 ¶ 2. A small by significant and non-transitory increase in price ("SSNIP") of cfDNA recover, isolation, and analysis products would not lead to a customer using a product outside of the market for all the reasons described above.

66. The relevant market is global in geographic scope. QIAGEN, for instance, purports to have a "Global presence with a focus on the most attractive developed and emerging markets," including "[s]hipping product to >170 [c]ountries" and "[d]irect sales in >30 [c]ountries." Ex. 3 at 61 [QIAGEN 2023 Annual Report]. Similarly, QIAGEN's FAC notes that Zymo is a "globally established biotechnology company," quoting Zymo's website. Dkt. No. 1 ¶ 5.

67. There are substantial barriers to entry in the relevant market that protect QIAGEN's monopoly power. Barriers include the substantial time and expense required to develop cfDNA recover, isolation, and analysis kits, the relatively small size of the market, and the regulatory hurdles involved. On information and belief, development of cfDNA kits to compete with Plaintiff's products requires a multi-year and multi-million dollar product investment. Potential competitors that can undertake such an investment would face QIAGEN's established market hold, preexisting market connections and exclusivity arrangements, and QIAGEN's unsupported assertions of sham litigation that could cost millions of dollars to defend, and cause years of additional delay.

68. QIAGEN possesses monopoly power in the global cfDNA recover, isolation, and analysis market driven by the QIAGEN QIAsymphony PAXgene Blood ccfDNA Kit and QIAamp MinElute ccfDNA Kit, as well as other products and services. In fact, QIAGEN has a durable and dominant 73% market share in the relevant market based on citing references to QIAGEN's cfDNA products from 2019-2023. In comparison, Zymo only accounts for 4% of the cfDNA recover, isolation, and analysis market, and additional substantial competitors only account for relatively small market shares, including ThermoFisher Scientific's cfDNA isolation kit at 11%, Promega's ccfDNA kit at 5%, Norgen Biotek's cfDNA kit at 3% and Macherey-

SECOND AMENDED ANSWER AND
COUNTERCLAIMS
29
Case No. 8:24-cv-01832-FWS-DFM

Nagel's cfDNA kit at 3%. Consistent with this durable and dominant market share, QIAGEN consistently touts itself as "[i]ndustry-leading . . . in nucleic acid isolation," and "the leading global provider of Sample to Insight solutions." Ex. 4 at 2; Ex. 5 at 2. QIAGEN credits its market "leading position" to "having pioneered the introduction of commercial DNA purification kits for forensic casework samples in the late 1990s," and maintains its monopoly position through, among other things, aggressive expansion and acquisitions. Ex. 6 at 2; *see also* Ex. 7; Ex. 8.

### b.    QIAGEN's Sham Litigation Is Unlawful Exclusionary Conduct

69.    In developing its own cfDNA isolation kit, Zymo ensured that its product does not infringe Plaintiff's patents. For example, central to QIAGEN's Asserted Patents is the use of "anion exchange groups." The very first sentence of the Summary of the Invention states that the "present invention is based on the finding that extracellular nucleic acids can be efficiently isolated from various different samples by using a special protocol which involves the use of an anion exchange material which binds the extracellular nucleic acids." Dkt. No. 1, Ex. 3 at 3:66-4:3. Similarly, the claims of the Asserted Patents all recite the use of "anion exchange." Dkt. No. 1, Exs. 3 and 4. QIAGEN's FAC, however, includes no allegations suggesting any meaningful pre-filing investigation as to this central issue. At most, QIAGEN points to a page in a MAGicBead™ flyer that says nothing about anion exchange, but rather notes certain advantages of Zymo's MAGicBead™ cfDNA Isolation Kit, such as having an alcohol-free workflow, requiring minimal binding buffer volume, and avoiding the need to air-dry beads. *See* Dkt. No. 1 ¶¶ 23, 39.

70.    In fact, Zymo's MAGicBead™ cfDNA Isolation Kit does not use anion exchange and QIAGEN had no good faith basis for its patent assertions against Zymo, a point QIAGEN would have uncovered had it performed adequate pre-filing investigation.

71.  As described above, QIAGEN's FAC alleges that "QIAGEN performed experiments" to measure the pH of the Accused Product's buffers and mixtures and the surface charge of the magnetic beads.  QIAGEN's allegations, without any supporting data or information regarding its methodologies, do not support QIAGEN's assertion that Zymo's product "showed behavior that is consistent with an anion exchange mechanism."  Unlike QIAGEN's technology, Zymo's MAGicBead™ technology represents a novel and proprietary approach that does not rely on anion exchange for DNA binding and elution, as demonstrated in, for instance, the elution profiles shown below:



As shown above in the panel on the left, Zymo's product exhibits full DNA recovery at all NaCl concentrations, including 0 mM,  establishing that MAGicBead™ is insensitive to ions and efficiently elutes DNA without requiring ions.  In plain contrast, and as shown in the panel on the right, QIAGEN's product is sensitive to ions, exhibiting increasing elution as the concentration of NaCl increases.  As another example, the data below shows that as NaCl concentration is increased, Zymo's

MAGicBead™ product exhibits full retention of DNA whereas in QIAGEN's product DNA is released:



72. This further confirms that MAGicBead™, unlike QIAGEN's product, does not utilize ion exchange. QIAGEN's unsupported allegations about the use of different pH levels in MAGicBead™ and increased surface charge at low pH are consistent with alternative mechanisms of operation (such as a covalent bonding) and do not prove, let alone suggest, the use of anion exchange in Zymo's MAGicBead™ products.

73. Confident of its position, and to try to avoid wasteful litigation as well as harm to competition and consumers, Zymo offered to make its MAGicBead™ cfDNA Isolation Kit available to QIAGEN for testing prior to the filing of this litigation. As discussed above, Zymo proposed to provide QIAGEN's technical team "a care package including SOP, Instruction, some relevant Information about our system, our purification Magicbead and other reagents." Dkt. No. 29, Ex. 2 at 2. The purpose of this offer, Zymo explained, was to allow QIAGEN to evaluate Zymo's technology and confirm that it was indeed different from QIAGEN's technology. *See id.* As Zymo explained, there would be "no strings attached from Qiagen's side, no NDA or CDA, and no MTA." *Id.* Zymo further added that the relevant experiments would

take only about "half a day" to complete. *Id.* Zymo even offered "to pay Qiagen for the technician's time spent on the experiment." *Id.* QIAGEN never responded to Zymo's proposal, and instead simply filed suit roughly six months later without investigating. Had QIAGEN taken up Zymo on its offer, it would have been able to promptly generate data of precisely the type shown above, which demonstrates non-infringement.

74. QIAGEN's enforcement of the Asserted Patents against Zymo, a known non-infringer, without meaningfully investigating its claims, constitutes anticompetitive exclusionary conduct taken to maintain and entrench QIAGEN's monopoly position in the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. By reason of QIAGEN's anticompetitive conduct, Zymo and other competitors, as well as researchers and other consumers in the relevant market, as well as the market itself, were injured in their business and property.

75. Plaintiff's lawsuit claiming infringement of the Asserted Patents constitutes sham litigation because it is objectively baseless, as no reasonable litigant could have a realistic expectation of success on the merits of the claim. Plaintiff's unsupported allegations regarding analyses of pH levels and surface charges in MAGicBead™ do not prove, let alone suggest, that anion exchange is used in MAGicBead™, and QIAGEN's decision to nonetheless pursue litigation in the face of Zymo's offer to assist it with testing that would prove non-infringement shows that QIAGEN's actions can only be motivated by a desire to harm Zymo competitively. As outlined above, Plaintiff acted in bad faith, and without probable cause, as they were fully aware prior to bringing suit that Zymo does not infringe the Asserted Patents, but nevertheless filed a lawsuit against Zymo. To the extent Plaintiff alleges it was not fully aware, it acted in bad faith by failing to adequately investigate its claims, despite Zymo's offer to facilitate and even fund such an investigation.

76. Plaintiff has engaged in this conduct with the subjective intent to thwart legitimate competition and to use the litigation process as an anticompetitive weapon.

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                                    33                    Case No. 8:24-cv-01832-FWS-DFM

Instead of competing on the merits, QIAGEN has pursued bad faith litigation to knock out potential threats and attempt to form an ill-gotten monopoly in the global cfDNA recover, isolation, and analysis market.

### c.   Antitrust Injury and Damages

77.   Zymo has been injured in its business as a direct and proximate cause of Plaintiff's anticompetitive conduct, including the substantial costs both of defending against Plaintiff's bogus patent infringement action and being forced to bring this counterclaim to stop Plaintiff's anticompetitive conduct.   Moreover, Plaintiff's monopolization of the relevant market has caused Zymo to suffer antitrust injury.  In a market free of Plaintiff's anticompetitive conduct, Zymo would grow and expand the market for cfDNA recover, isolation, and analysis, and thus would have substantially greater revenues from selling its own MAGicBead™ cfDNA Isolation Kit.  Zymo also has suffered, and will continue to suffer, irreparable harm to its business and good will as a direct and proximate result of the anticompetitive conduct of Plaintiff.

78.   Zymo has been injured as a direct and proximate cause of Plaintiff's anticompetitive conduct through the loss of sales and damage to business relationships.  Diagnostic tests for oncology and prenatal diagnosis of diseases using cfDNA isolation technology require in excess of 5 to 10 years for development, clinical trials, and regulatory approval.   Thus, the product chosen for cfDNA extraction for these clinical trials requires long-term commitment because changing the product that is used is difficult or impossible after development, clinical trials, and regulatory approval are underway.  After diagnostic tests are approved, they are often used in patient care for another 20 or 30 years or even longer for the product lifecycle.  Therefore, many diagnostic companies may not use a supplier whose technology is in question as a result of sham litigation, such as Zymo.  As a result of QIAGEN's sham lawsuit, Zymo has already been contacted by several key business relationships expressing concern over the sham litigation.  The total potential financial impact from

SECOND AMENDED ANSWER AND
COUNTERCLAIMS                                    34                      Case No. 8:24-cv-01832-FWS-DFM

losing or jeopardizing these key partnerships could exceed one hundred million dollars over the next five years and will likely be significantly more in cases with a product lifecycle over 30 years for a diagnostic test, not including the irreparable damages to Zymo's long-standing reputation.

79.   In addition to disruption to business and brand perception, Zymo's significant investment of resource to defending the sham litigation could slow research and development, product launches, and harm Zymo's competitive position.

80.   Zymo has been damaged in an amount to be proven at trial.  Zymo is also entitled to treble damages under Section 2 of the Sherman Act (15 U.S.C. § 2), and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§15 and 26) to compensate it and the relevant market for the predatory and anticompetitive conduct by Plaintiff and its efforts to prevent the entry into or expansion therein of other market participants during the time period in question.

81.   As a further direct and proximate result of Plaintiff's sham litigation against Zymo, Zymo is entitled to recover its attorneys' fees and costs herein as damages, pursuant to 15 U.S.C. § 15(a).

## EIGHTH COUNT

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

82.   Zymo incorporates by reference and restates the preceding paragraphs of its Counterclaims as though fully set forth herein.

83.   QIAGEN's filing of this sham litigation was designed to induce a breach or disruption of contractual relationships between Zymo and third party business relations.  On information and belief, QIAGEN was aware of Zymo's numerous valid contractual relationships with third parties, including research and development collaborations, customer sales agreements, and distribution agreements.  *See e.g.*, Ex. 9; Ex. 10.  As explained above, QIAGEN's asserted patent litigation constitutes sham litigation because it is objectively baseless, as no reasonable litigant could have a realistic expectation of success on the merits of the claims.  *See supra* ¶¶ 65-69.  Thus,

SECOND AMENDED ANSWER AND COUNTERCLAIMS                                35                Case No. 8:24-cv-01832-FWS-DFM

QIAGEN did not pursue the sham litigation for any proper or justified reason, but rather as an anticompetitive and intentional method of disrupting Zymo's legitimate business and valid contractual relationships.

84. As a result of QIAGEN's intentional interference, Zymo has and/or will suffer actual damages, including the disruption and induced breaches of third party contractual relationships. As described above, as a result of QIAGEN's sham lawsuit, Zymo has been contacted by several key business relationships expressing concern over the sham litigation. The total potential financial impact from losing or jeopardizing these key partnerships and customers could exceed one hundred million dollars over the next five years and significantly more in cases with a product lifecycle over 30 years, not including the irreparable damages to Zymo's long-standing reputation.

85. For example, Zymo has been contacted by long-standing, high-volume business partners raising concerns and/or suspending collaborations in view of QIAGEN's pending sham litigation. Disruption or suspension of these existing business relationships as well as others has and/or will lead to damages in the tens or hundreds of millions of dollars.

86. The foregoing conduct by QIAGEN is and/or was oppressive, malicious, and fraudulent, entitling Zymo to punitive damages in an amount to be proven at trial.

87. By reason of actual disruptions to contractual relations between Zymo and third party business partners, Zymo has suffered damages in an amount to be proven at trial.

### RESERVATION OF RIGHTS

88. Zymo expressly reserves the right to assert any additional defenses or counterclaims that may now exist or in the future may be available based on discovery and further factual investigation in this case.

### DEMAND FOR JURY TRIAL

89. Zymo hereby demands a trial by jury of all issues so triable in this action.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

36

Case No. 8:24-cv-01832-FWS-DFM

**REQUEST FOR RELIEF**

WHEREFORE, having fully answer the FAC and having Asserted Affirmative Defense and Counterclaims, Zymo respectfully request the following relief:

A.      That the appropriate Court enter judgment on the Plaintiff's FAC and Zymo's Counterclaims in favor of Zymo, against Plaintiff, with Plaintiff being awarded no relief of any kind in this action;

B.      That the appropriate Court enter judgment and/or declarations that Zymo does not infringe the Asserted Patents and that the Asserted Patents are invalid and unenforceable;

C.      That the appropriate Court enter judgment and/or declarations that Plaintiff's conduct as stated in this Counterclaim violates Section 2 of the Sherman Act, 15 U.S.C. § 2;

D.      That the appropriate Court award Zymo all damages according to proof at trial;

E.      That Plaintiff be order to pay punitive damages to Zymo for Plaintiff's acts of intentional interference with contractual relations as it is and/or was oppressive, fraudulent, and malicious;

F.      That the appropriate Court award treble damages to Zymo pursuant to 15 U.S.C. 15(a) as a consequence of Plaintiff's violations of the Sherman Act;

G.      That the appropriate Court enter a judgment declaring this case exceptional under 35 U.S.C. § 285 awarding Zymo its attorneys' fees and prejudgment and post-judgment interest and/or an award of Zymo's reasonable attorneys' fees and costs under 15 U.S.C. § 15(a);

H.      That the appropriate Court award Zymo all of its costs in this action; and

I.      That the appropriate Court grant such other and further relief as such Court shall deem just and proper.

Dated:  December 5, 2024

Respectfully submitted,


By: */s/ Derek C. Walter*
    Derek C. Walter
    WEIL, GOTSHAL &
    MANGES LLP
    201 Redwood Shores Parkway
    Redwood Shores, CA 94065-1134
    Tel: (650) 802-3000
    Fax: (650) 802-3100
    edward.reines@weil.com

    *Attorney for Defendant*
    ZYMO Research Corporation

SECOND AMENDED ANSWER AND
COUNTERCLAIMS

38

Case No. 8:24-cv-01832-FWS-DFM