# Exhibit 2

 Outlook

---

## Re: Response to Letter Dated November 27, 2023

---

**From** Jonathan Claypool <JClaypool@zymoresearch.com>

**Date** Fri 3/1/2024 2:13 PM

**To**  Mann, Rex <RMann@winston.com>

**Cc**  McCarty, Rich <RMcCarty@winston.com>; Lewis, Evan <EDLewis@winston.com>

**Bcc**  Larry Jia <LJia@zymoresearch.com>

RE: Clarification and Request for Constructive Dialogue

Dear Rex,

Thank you for your response. We appreciate your attempt to clarify Qiagen's position, despite your personal time constraints due to ongoing trial engagements. However, we must express our concerns regarding several aspects of your communication and the broader approach being taken by Qiagen in this matter.

First, our requested four points provided prior are common in agreements when discussing trade secrets or materials embodying trade secrets. Our goal is to engage on a business—technical level with specified people at Qiagen to learn why these two technologies are totally different instead steering toward this as a litigation as priority, which is reflected in all of your correspondences. One example is the proposed disclosure to only Qiagen legal team, which is problematic, especially given the CEO involvement. In addition, it is not logical that trial lawyers are better at understanding the technology than scientists. We also view reference to litigation remedies, such as a protective order, as a threat or at least a litigator's view on proceedings. We are confident that technical teams can resolve this easily once the scientific information and data are communicated between the two entities. We favor resolving this real issue as opposed to circling on legal points for dispute.

Secondly, your interpretation of our requested terms as "onerous" seems to overlook the essence of our concerns. The protective measures we propose are designed to safeguard Zymo's interests, given the sensitive nature of the information that might be shared in the course of these discussions. While we are open to revising these terms, a collaborative approach, rather than a unilateral dismissal, would be more in line with the spirit of mutual respect and understanding.

Thirdly, the assertion that Qiagen has no interest in Zymo's technology contrasts with the resistance to protect our trade secret information. If Qiagen's intentions are as stated, there should be openness to discussing safeguards that protect both parties' interests without escalating to a legal dispute.

Lastly, while we understand Qiagen's commitment to protecting its technology and intellectual property rights, the tone and insistence on timely responses to your requests on most of your previous correspondences , irrespective of your own admitted delays, come across as unbalanced and, frankly, unfair. This discrepancy in expectations sets as an example of arrogant and "big boy" attitude in dealing with Zymo.

**Our New Proposal**

Zymo will send Qiagen tech team a care package including SOP, Instruction, some relevant  Information about our system, our purification Magicbead and other reagents,  to allow Qiagen tech team to evaluate our technology, generate your own data. Based on Qiagen`s own assessment we are confident Qiagen will conclude our technology is different from their technology. The technology will speak for itself once Qiagen`s technical team understands how our innovation works.

For the above New Proposal, Zymo will have no strings attached from Qiagen's side, no NDA or CDA, and no MTA.

The experiments should take about half a day by general lab technician. Equipment requirements are: a magnet, a pipette, 1.5ml tube and a spectrometer such as Nanodrop. Zymo is willing to pay Qiagen for the technician's time spent on the experiment.

We can reengage after this assessment. Please consider this path.


Best,


-Jonathan